Counsel. Good morning, Your Honor. I please report. My name is Maria Andrade. I'm here proud to represent my client, Petitioner Claudia Galindo DeSevilla. We're here this morning asking the Court to vacate and declare invalid the reinstatement order that was issued against her on one of two independent grounds. The first and most clear is that the reinstatement statute simply doesn't apply to expedited removal orders. We know this from looking at the plain language of the statute that suggests and states clearly the class of orders that the reinstatement statute was meant to apply to are the ones that would otherwise be subject to reopening and review. It's consistent with the congressional intent that we've heard the Court make reference to in multiple decisions, that the interest in Congress was simply to avoid giving hearing after hearing, judicial hearing, to an alien once they've had their one chance at it, once they've had their one bite at the apple. An expedited removal order by law has no means for judicial review, has no means for the individual. I thought that the way the system was set up was that when there was an expedited removal, they could get review, but what they were supposed to do was get it in the consulate of the United States that's in the country they were removed to. So if somebody comes over the border from Canada or Mexico and they're told, no, you can't come in here, you don't have a right to be here, what they're supposed to do under the law was go back to Canada or Mexico and appeal that order in the American consulate, and that's where they got their review. And that the only limitation on review was if they subsequently sneak in, then they've lost their chance to get that review. Isn't that the way it works under Perales-Squierdo and that recent panel decision? That's not entirely correct, Your Honor. The expedited removal proceeding, the immigration officer, once they're confronted with a person who's making an application for admission, can declare that they're inadmissible either because they don't have proper entry documents or because they declare that they're or they determine they made a misrepresentation. In making that, if the individual claims either a credible fear of persecution if they were returned or if they say, no, wait, I'm a citizen or I'm a legal permitted resident or I was previously admitted as a refugee, then in the – when they make a credible fear claim, that goes to an asylum officer. And if the individual disputes the asylum officer's claim, that can go to an immigration judge. That's just the asylum question. If the person makes a claim that they were previously admitted as a refugee or they have LPR status, that claim goes – they make a sworn statement, the alien makes a sworn statement that, hey, I say that I'm previously admitted. The officer then can refer it to a judge, but the judge only can decide whether or not to affirm or vacate the immigration officer's determination that they're subject to expedited removal. If the immigration judge says, yep, they're an LPR, they terminate and vacate the expedited removal, and then the government has the option of issuing them an NTA. That's how the expedited removal procedure works. Alito, wasn't the problem here that she made a false claim that she was a U.S. citizen when she attempted to enter, and that's why the initial order of expedited removal was entered against her? That's correct. The expedited removal order was issued, and it made two determinations, one, that she misrepresented herself, and second, that she made a false claim. It's our contention that she didn't actually commit the facts, you know, do the actions that would meet the standard of making a false claim, and even if she had, there's evidence in the record, in the certified administrative record, in the I-213, that says that she admitted her true identity. If that's the case, if there is a determination by the immigration officer that an alien has misrepresented her identity, getting back to Judge Kleinfeld's question, how does the alien at that point adjudicate that dispute? They don't. They don't get to adjudicate their dispute. I mean, unless they're going to say under sworn statement that I really am who I say I am, I really am a citizen, I really am an LPR. She did not do the first time, right? She, in essence, I don't know if this is the right word as a matter of immigration law, but she, in essence, acquiesced to the expedited removal order and did not contest at that time that she judged. Well, she physically left the country. Right. She physically left the country. She was not permitted to, I mean, there is no procedure for her to actually, you know, put in evidence on her behalf or to ask the people what to say. There is a procedure if she will complete a sworn declaration that says, no, immigration officer, you're wrong. I am a U.S. citizen and you should not be removing me on an expedited basis. But she did not do that. That's correct. But what there is no procedure for is for her to say, hey, I know what the law is for making a false claim to citizenship and I didn't do that. I did not get a person, the primary inspector didn't ask me directly, hey, are you a U.S. citizen? I thought you said yes and then no in that answer. What I said is. First you said yes, she acquiesced and then she said something that's opposite to that. I don't get it. That's what I heard too. Okay. The difference being that she did not declare that, yes, I am a U.S. citizen under a sworn statement. She did not invoke that procedure. Right. So when I use the term acquiesce and I don't know if that's the technical term or not, she basically didn't fight it at that point. She, as Judge Beezer points out, she left. That's correct. They put her on the bus and they sent her back or whatever. That's correct. Okay. And then she comes back again and this time apparently, it's alleged, she did the same thing. She provided identification in someone else's name. And at that point the order was reinstated and they want to remove her again. And now you're here before us saying, no, my client's due process rights are being violated. I want an opportunity to contest the circumstances under which she presented herself to the immigration office. Right. And if I can get back to the, but the distinction is really important in that she's not contesting. I'm, I am denied due process because I really was a citizen. Right. She's saying, I was denied due, no, she's saying, the determination. She's saying, well, I may not be a citizen, but I didn't misrepresent that I was. That's what she said. She said, I didn't commit a false claim. The false claim determined, and therefore I shouldn't be marked with a false claim to determination that will forever prevent me from ever becoming a lawful citizen. I don't get how you get around Morales-Esquiroto, the en banc decision. The en banc decision, it could have just stopped after the first section. But it went on to say, there can't be a due process violation because some right has to be taken away. In order for a person to be entitled to due process before the right is taken away. Once a person has been subjected to a removal order, they don't have a right to be in the United States. So no right is taken away when they're, when it's reinstated. Our contention is that Morales-Esquiroto and the holding there comes out and relies upon a genesis of cases in which the alien in the prior, had a prior opportunity for judicial review, had a prior. I thought it was an en banc, so there's no way, nothing we can do about it, of course. And that it was not a different framework. What's the distinction between the statutory framework applicable? The statutory framework is the same in that the reinstatement statute is the same that applies. However, at 496 in Morales-Esquiroto, it states that we do leave open the possibility for a challenge to, that the individual procedures, or the individual may bring a claim alleging that the procedures do not afford due process. I'm looking at 496. Show me what you mean. Okay. It's right below. See, my highlighted portion was that the reinstatement statute specifically precludes Morales from seeking to reopen the previous removal order based on defective service or any other grounds. That was the part that I'd highlighted, but obviously I've missed something. I'm looking at the sentence right before the end of Section or beginning of Section B. It says while the regulation does not offend due process, we leave open the possibility that individual Petitioners may raise procedural defects in their particular cases. But the procedural defect that you are raising is, in essence, a due process claim, that she didn't have an opportunity to contest the facts and circumstances surrounding her attempted entry. And why isn't that squarely within the holding of Morales' credo, which says that you don't have the right, once the order is reinstated, to contest it? Because the procedural defect, the reinstatement statute of procedures do not solicit or allow for the challenge to the, to allow someone to say the reinstatement order is factually inaccurate. Doesn't that language refer to the procedure of establishing that this is the alien who was the subject of the reinstatement order? Isn't that what the Court was referring to when we talk about procedures at page 496? I don't believe that it's limited to that. The section, subsequent that starts at Section B, talks about how Morales is here to attempt to show a procedural defect by showing how he would submit evidence into the record. It looks like B kills you, though. I mean, it goes on to talk about where somebody says that the first order violated due process, so the INS cannot reinstate the prior order of removal that did not comport with due process. It says, yep, we have some panel decisions that say that, and now we overrule them. And those, those that they're overruling and Morales-Escuero both come out of, that are distinguishable because those cases were where the individual had the right to disreview before. This is a case for the first time, first impression of this Court where we're saying that the expedited removal order, there's a contention that the facts and the legal determinations in that order are inaccurate. And that question hasn't been before the Court. I see I'm over time, and we'll give you one minute for a rebuttal anyway. Thank you. Thank you, counsel. Counsel. Please. The Court, Barry Pettinato, appearing on behalf of the Attorney General. I just want to address, before I even get into my argument, one thing I think several of the judges are asked about. In an expedited removal order, if an alien wants to make any challenges, he has to do it in habeas, and it's limited under 1252e to three discrete things. One, that, in fact, he isn't an alien. Two, that he wasn't previously removed. And three, that he is, in fact, a lawful permanent resident. That's all Congress allowed for in terms of review for expedited orders of removal. And those are the proceed – am I correct when I looked at that language under Morales-Escuero? Isn't that the procedures that we're talking about? Well, that's in an expedited removal order. In the procedures in the – in a reinstatement case that the Court can review are whether it's an alien, was previously removed and illegally re-entered. Slightly different. Way back when, starting in Castro-Cortez, those are the three discrete things that the Court has said we could review. So is your answer, Mr. Pettinato, that you don't know what the Court was referring to when we use that language at page 496? Let me just take – That's what I think. That's how I read the opinion. Now, I wasn't on – On 496? Yeah. Now, where are you on – let's see. I'm looking at just before subsection B, the language that we were discussing with Ms. Andrade, where we say, while the regulation does not offend due process, we've opened the possibility that individual Petitioners may raise procedural defects in their particular cases. I read that to mean the procedural defect would be that, for some reason, the alien is now being ordered, reinstated, and removed in violation of these three. Exactly. I agree with you. We're totally talking about the reinstatement process. Okay. Not – here, you have to be very aware that what's happening in this case is, through the reinstatement process, essentially the Petitioner here is trying to bootstrap her attacks on the previous expedited order, and through a petition for review of the reinstatement case, trying to bring those back up. And the fact that the expedited removal order is – this Court has no review over it is essentially so well settled, I can give you a whole laundry list of reasons. In the reinstatement statute itself, it says the prior order is not subject to review. That's the 241a5 language of the reinstatement statute. Could you use U.S.C.A. citations? It's hard for me to translate. Sure. It's 1231a5. The reinstatement statute itself says the prior order of removal is not subject to being reviewed. And that's what they want reviewed here, the expedited order – removal order. So under the reinstatement statute itself, it says it can't be reviewed. Okay. I don't want to beat a dead horse here, but I want to make sure I understand it. So what that means is the only thing that the alien can ask a court to review is whether or not he is an alien – he was the same alien who was the subject of that order, which is now being reinstated, and whether or not he's an LPR. That's it. Those are – if he alleges a procedural defect on any of those three grounds, we have limited jurisdiction under habeas to review that. Otherwise, we don't go to the underlying merits of why the order was entered initially. I – I essentially agree with you. I think that's a – that's a fair reading. Could he still get – could the alien still get review of the original expedited removal order by going to the consulate in the alien's home country? Your Honor, I heard you say that, and I'm not quite sure where that – where that comes from. I'm not – I'm not aware of that. I mean, the – the officer says, she lied to me. She said she was an American citizen, and what's more, she admitted she lied to me. Suppose she says, no, no, no, that's not true. He just doesn't understand Spanish, or he didn't understand me, or he lied himself in his form that he filled out. Is there some place she can litigate whether that's so? Not – not really. Well, that's because – that's – I'm sorry. That's because we're talking about arriving aliens here who – coming from any country around the world, and expedited removal process allows the – the inspectors at the border to turn them back if they have no valid entry documents, and if they make – Okay. Let me make the hypo simpler. Suppose the officer turns the person back and says, it's – it's from some country where you need a visa stamped in your passport before you get to the U.S. And the officer says, you don't have a visa. You can't come in. And the alien says, yes, I do, it's right here. And the officer says, I can't read the rubber stamp. Is there some place in the country or wherever she can litigate? Well, in that – in that circumstances, it would elevate up the chain with – You spoke over me, and because I was talking, I couldn't hear you. I'm sorry. In a situation like that, it would elevate up the chain within DHS itself at the border. If the primary inspector says, I don't see that you have a visa in here, in your passport, and if the alien contested that, then it would go on up into secondary inspection, and you'd have more senior officers looking at it to make that determination. I think one of the things you can't lose sight of, the fact that these aliens that are arriving – arriving aliens at the border have no constitutional due process protections at all, because they're coming from – they're not even within the bounds of the United States. So in essence, we're back – forget about IRERA and all that stuff. If we're back in the good old days, they would basically be excludable aliens who are being ordered excluded at the border. We're not letting you in. Exactly. It's this – expedited removal is exactly that same process under a new name. That's exactly – you've got it right. Exactly. So the expedited removal – and, Judge Kleinfeld, I actually want to point out one case that you actually were on the panel on, Avendano-Ramirez. I don't remember it right now. You don't remember it. You should take a look at it, Avendano-Ramirez. We cite it in our brief. That's where this Court said – here, Alex, let's – just give me one second. The Court actually said – I'll just give you the cite. It's 271 F. 3rd, 1169. In that, the Court actually said – and you were sitting on the panel – and said that there's no review of expedited removal orders, either directly or collaterally. And the Court specifically said, quote, we agree that Section 241A.5 – that's the 1231 code section that I just mentioned – bars examining the original deportation order. That's at 1170. And you were on that panel. So there's no real dispute here that the underlying expedited order of removal cannot be reviewed. And what they're trying to do here is, through bringing a challenge to the reinstatement order itself, bring up the old – and the initial argument that they make regarding the Petitioner makes that the reinstatement statute itself doesn't pick up expedited orders of removal. The language in the expedited removal – I mean, the reinstatement statute talks about government may reinstate a prior order of removal. And the best evidence that prior – the orders of removal also include expedited orders of removal is in 1252A.1. 1252A.1 says that's going to be the exclusive means for the Court to review final orders of removal. And then it parenthetically says, excluding orders of removal in expedited removal proceedings. So if that's the clearest evidence that Congress intended, that expedited removal orders are final orders of removal, which just so happens to be that the Court can't review it in 242 proceedings – 1252 petitions for review proceedings. I'm looking at this Alvandano decision that Judge Fernandez wrote for a unanimous panel with me on it. Right. Which language in it are you referring to? At – on page 1170, there's language there. Wait a minute. There is no 1170. It starts at page 813. It wasn't that long. Oh, I'm sorry. Actually – oh, sorry, sorry, sorry. Let me see. I'm sorry. I just quoted your language from Alvarenga, which you were not on. Oh, I'm sorry. Here. You're right. Let me give you the language. Alvandano-Ramirez. It actually said – it basically holds that the review of the expedited removal order is actually not – is barred under section 1252a2a, and this is what the Court said. Inasmuch as, quote, our review would necessarily involve entertaining a claim arising from the expedited removal order because we would be asked to nullify the continuing effects of that order. That's at 818. Essentially, what the – what the panel that you were sitting on, Judge Weinfeld, said was that when you combine 1252a2a with the limited habeas review that aliens would get in expedited removals, which is found in 1252e, it says that the Court went on – the Court said that Congress had, quote, spoken quite clearly regarding, quote, its intent to severely limit both contemporaneous and late tampering with the results that flow from the expedited removal orders. That's at page 818 and 819. So I think it's pretty well settled. In Morales-Escuero, it actually says – there's language in Morales that actually says – Morales 2, the second one, the in-bank decision – that makes very clear that there's no review of the underlying expedited order removal here. I see that my time is up. Close to – oh, I guess I have 37 seconds. Sorry. You're over 5 minutes. Oh, I'm over. I'm sorry. You're right. It's exactly what you warned against. If there's any other questions from the Court, I'll be happy to answer them. Thank you, counsel. All right. Thank you. On the question of Judge Kleinfeld with regard to the review in the expedited removal order process, I just would like to direct the Court's attention to 8 CFR 235.3 sub b and 8 U.S.C. 1225. And there you'll see the extent of the procedure for review in the expedited removal order process. This is what I previously discussed. When we allow an expedited removal order to be reinstated, an expedited removal order that was issued by an individual officer, it is a recipe for due process disaster. And it is another reason – you know, this case is a very good example of the problems that are inherent with allowing the combination of two summary proceedings. And to hold that the reinstatement statute doesn't apply to expedited removal orders does not thwart the reinstatement statute. Plenty of people are still going to be subject to reinstatement, plenty of people with judicial removal orders. It's not going to thwart the expedited removal procedure. There's going to be plenty of people that are subject to expedited removal. It's consistent with the language we've seen in congressional history that shows that their interest, primary and paramount, was to avoid more than one full-blown judicial hearing, more than one bite at the apple. You're mixing apples and oranges. You're mixing rules that used to be applied to excludable aliens versus rules that applied to aliens who were already lawfully admitted and then who left the country and came back and there was some problem with their readmission. And then Congress tinkered with the statute and came up with these new terms. But you still face the fundamental problem that an alien who presents himself at the border who is, in essence, excludable doesn't have the same due process or constitutional rights that a lawful permanent resident would have if he were standing in the shoes of the alien. And that's where I'm having a hard – I understand your frustration, but I don't think that there is, as Congress has told us, power in our court to grant you the relief that you're asking for, particularly of our in-bank decision, which I think controls it. The due process protections are limited, of course, as you say, at the border. But what we can't lose sight of any more than we can lose sight of arriving aliens or in times of very little process at the border is the fact that somebody who's within the interior, albeit unlawfully, stands in a different position. They stand in a position of being in the interior and subject to Fifth Amendment due process rights that are greater than one that's at the border. But wasn't that true before? I mean, if we found somebody in the interior and they were placed into deportation proceedings, we treated them differently than if they were knocking on the door at the border. That's true. We provided the bare minimum, which we still provide the bare minimum, which is one judicial hearing for folks that are found in the interior. If I got this right, under your analysis, somebody who is excluded at the border and sent back, never gets into the United States, has fewer rights if they stay in their home country and then try to come in again legitimately through the border. They have fewer rights than if after they get excluded at the border, they never get into the United States. They sneak in somewhere other than the border station, and then they get caught some hours or days or years later. That's true. And it's consistent with decades of case law in this Circuit and in others. I mean, the interest in an expeditious means to remove aliens from the country does not have to come at such a high price that we have to undermine decades of case law that have established they're entitled to greater due process rights. Isn't that a determination that Congress made when it enacted this statute? No. The reinstatement statute was enacted to avoid giving judicial hearings with full judicial review the right to present evidence, the right to have an attorney, to give them more than one bite of that apple. That's what they wanted to avoid. How many bites are they going to get, one or a hundred? How many bites? Yeah. They're going to keep coming back and forth, back and forth, back and forth, back and forth. One bite. One bite, and she never got it. Does Congress specifically say that? They don't use the apple analogy, to my knowledge, but they do. They say that they want to avoid. How many times are they offered proceedings in court after they've been deported and then they sneak back across the border and we throw them out again, they come back a third time, are they now entitled to a third hearing? No. They get one bite. A fourth or a fifth? No. Why not? Yeah. Under your theory, why not? Under your theory, why not? They're in the U.S. physically, so they get due process rights. Sneaking in is the only way to go. Because it's permissible for Congress to say that the bare minimum of procedural protections that you get is one time to get your full judicial hearing. You get your chance to come forward with your lawyer and put in all your evidence. You get to file an appeal. You get to, you know, you get to do your full day in court. Well, your client had that opportunity on the first deportation. She didn't, Your Honor. It is a matter of law and the regulations in the statute. It's a question of whether she took advantage of it, right? No, Your Honor. I believe that that's incorrect, because the parameters of her review would have only been if she had made a claim to fear of persecution in her home country or if she had said, I really am a legal permanent resident. Her contention here and her real gist of her argument is that it's the fact that this one border officer said I did certain things that constitute a false claim to citizenship, and I didn't do those. I'm not saying I'm a citizen. And she didn't contest it at the time. But I didn't do those. She didn't. She had the right to, but she didn't. She did not have the right to contest it. She has the right to answer questions, and once the determination has been made by the inspecting officer, that she is already inadmissible. Thank you, counsel. Thank you. The Sevilla v. McCasey is submitted.
judges: Beezer, Kleinfeld, Tallman